(C. D. 1089)

JULIUS WILE SONS & Co., INC. v. UNITED STATES

United States Customs Court, Third Division

(Decided March 11, 1948)

*Barnes, Richardson & Colburn* (*J. Bradley Colburn* of counsel) for the plaintiff.
*Paul P. Rao*, Assistant Attorney General (*William J. Vitale*, special attorney), for the defendant.

Before CLINE, EKWALL, and JOHNSON, Judges

EKWALL, Judge: The collector of customs at the port of New York assessed duty at the rate of $5 per proof gallon under paragraph 802 of the Tariff Act of 1930, by virtue of paragraph 812 of the same act, upon an importation consisting of 500 cases of what is described on the invoice and entry papers as "Liqueur Veritas." Said assessment was made apparently upon the theory that the commodity was an imitation of absinthe. From this assessment plaintiff herein protested claiming that the merchandise is properly dutiable at $2.50 per proof gallon as a cordial or liqueur under said paragraph 802, *supra*, as modified by trade agreements with France, T. D. 48316, and Argentina, T. D. 50504. In an amendment to the pleadings it is claimed that duty should have been assessed at the $2.50 rate under the same paragraph, as modified by the trade agreement with

Mexico, T. D. 50797, as spirits manufactured or distilled from grain or other material, and compounds and preparations of which distilled spirits are chief value.

An internal revenue tax was also assessed upon this merchandise but is not in issue here:

The provisions of the statute in question are as follows:

PAR. 802. Brandy and other spirits manufactured or distilled from grain or other materials, cordials, liqueurs, arrack, absinthe, kirschwasser, ratafia, and bitters of all kinds containing spirits, and compounds and preparations of which distilled spirits are the component material of chief value and not specially provided for, $5 per proof gallon.

PAR. 812. * * * all imitations of brandy, spirits, or wines imported by any names whatever shall be subject to the highest rate of duty provided for the genuine articles respectively intended to be represented, and in no case less than $5 per proof gallon. * * *

Paragraph 802 [as modified by the French and Argentine Trade Agreements.] * * * cordials, liqueurs, kirschwasser, and ratafia, $2.50 per proof gallon. Paragraph 802 [as modified by the Mexican Trade Agreement.]

Spirits manufactured or distilled from grain or other material, and compounds and preparations of which distilled spirits are the component material of chief value, not specially provided for (other than those specified in any previous trade agreement concluded under the provisions of section 350 of the Tariff Act of 1930), $2.50 per proof gallon.

The plaintiff in support of its claim provided the testimony of two witnesses, one the vice president of the importing corporation, and the other the chief chemist of a firm of analytical chemists. Defendant's witnesses consisted of a United States Government chemist at the port of entry, and an importer of wines and spirits.

Mr. Wile, the first witness on behalf of the plaintiff, who had had 54 years' experience in the liquor business, testified as to the essential characteristic of absinthe, which he described as the flavor of wormwood or *Artemisia absinthium*, which imparts to the product a characteristic bitter taste. He stated that this Liqueur Veritas contains no wormwood nor synthetic substance simulating wormwood and does not have a bitter taste. On cross-examination this witness tasted a sample shown to him (which was later received in evidence as illustrative exhibit B), and stated that in his opinion it was absinthe; that the presence of oils of wormwood, in his opinion, is the reason for the predominant bitter taste. He further stated that the flavors of Liqueur Veritas and absinthe are similar only to the extent that they both have anise and probably licorice flavoring; that absinthe is much more bitter and pungent and leaves a bitter taste in the mouth, whereas the Liqueur Veritas tastes like an agreeable cordial and leaves a sweet taste. The two products differ in color; the absinthe being chartreuse green, while the Liqueur Veritas is paler and verges on

yellow. The reason for the difference in taste is that Liqueur Veritas does not contain oils of wormwood.

The report of the Government chemist in evidence (exhibit 2) shows the "Thujone reaction (worm wood oil)" to be negative. This is also true of the "Dragendorff reaction (for absynthin)."

Mr. Wile readily admitted that his corporation had made previous importations of merchandise identical to that involved herein and when shown a bottle (illustrative exhibit C), he identified it with particular reference to the label thereon, which among other things, states "Liqueur Veritas has the exact properties of absinthe except that it does not contain any wormwood." The label above referred to was in addition to the labels found on exhibit 1, the instant merchandise. This witness admitted to having bought and sold Liqueur Veritas containing the label as shown on said illustrative exhibit C.

Plaintiff's other witness, with an experience of 30 years in analyzing foods, drugs, and alcoholic beverages, testified that he had analyzed Liqueur Veritas from time to time for the presence of oil of wormwood and absinthin and had found none present. This witness had never tasted genuine absinthe. His testimony was that the chief characteristic of absinthe is the presence of wormwood or *Artemisia absinthium*, a drug, and that analysis demonstrated that there was no synthetic substance which simulated *absinthium* present in Liqueur Veritas.

The Government's witness Sample, who has been a Government chemist for 20 years, testified that he also had analyzed the imported commodity and found no wormwood oil present. This witness testified to familiarity with absinthe, and stated that while both absinthe and Liqueur Veritas have a licorice and anise flavor, the former lacks the bitterness of wormwood present in absinthe, and in color absinthe is darker due to the presence of wormwood oil.

This witness further testified that absinthe derives its name from the presence of the drug *absinthium*, a compound of wormwood oil and a drug. In determining whether a product is absinthe, one looks for the presence of this drug which is not found in Liqueur Veritas. Further, he stated that when absinthe was in commercial use, both Liqueur Veritas and absinthe were consumed as beverages. Both commodities possess the flavor of anise, as do a number of other products, such as anise liqueur, anisette cordial, and a product known as ojen. However, he stated that they differ sharply in taste, in color, and in effects or results obtained therefrom.

Plaintiff's contentions are: (1) Liqueur Veritas is not an imitation of absinthe; (2) it is a liqueur or, alternatively, a compound or preparation in which distilled spirits are in chief value; and (3) whether or

not this commodity be deemed an imitation of absinthe, it must nevertheless be held dutiable as claimed, inasmuch as absinthe is not mentioned by name in paragraph 812, *supra*.

On the part of the Government it is claimed that this Liqueur Veritas is a spirit in imitation of and intended to represent absinthe.

On the question of what constitutes an imitation, we find the following language used by the court in the case of *Stephen Rug Mills* v. *United States*, 32 C. C. P. A. (Customs) 110, C. A. D. 293, pertinent:

> There can be no question about the common meaning of the word "imitation" as defined by all the lexicographers. It is an act of imitating or copying, or that which is made or produced by imitating, or a simulated reproduction or representation of the thing sought to be copied or imitated.

That case involved the question of whether certain machine woven cotton rugs fell within the tariff designation of "imitation oriental rugs." The court there cited the case of *Torino Trading Corporation* v. *United States*, 1 Cust. Ct. 387, Abstract 39295, wherein this court held that since the design was one of the chief characteristics of oriental rugs, and the rugs there before it were of colonial design, they did not fall within the common meaning of the term "imitation oriental" rugs. Appeal from this decision was dismissed.

The Encyclopaedia Britannica (1947 ed.) contains the following information as to the commodity absinthe:

> Absinthe, a highly toxic liqueur or aromatized spirit, the characteristic flavouring matter of which is derived from various species of wormwood (*Artemisia absinthium*). Among the other substances generally employed in its manufacture are angelica root, sweet flag, dittany leaves, star-anise fruit, fennel and hyssop. The Swiss variety has a higher alcoholic strength than the French. The best absinthe contains 70 to 80% of alcohol. It quickly intoxicates, and its deleterious effects are more serious than those of other forms of alcohol. The wormwood acts powerfully upon the nerve-centres, and causes delirium and hallucinations, followed in some cases by idiocy.

The testimony shows that the essential characteristic of absinthe is the flavor of wormwood or *Artemisia absinthium*, which imparts to the product a characteristic bitter taste, and that absinthe is chartreuse green. Liqueur Veritas, according to the record, contains no wormwood nor synthetic substance simulating wormwood and does not have a bitter taste, but rather is sweet. Under the holding in the *Torino Trading Corporation* case, *supra*, the essential characteristic, i. e., the bitter taste imparted to absinthe by wormwood, is lacking in the commodity before us; therefore, it would not fall within the common meaning of imitation absinthe. While both commodities possess the flavor of anise, that flavor is common to other products, such as anise liqueur, anisette cordial, and ojen. Moreover, the use of the instant merchandise produces no harmful results, such as are produced by absinthe.

Government counsel points to the label on illustrative exhibit C in evidence, which, among other things, states that the Liqueur Veritas therein contained is an "absinthe substitute." The word "substitute" is defined in Funk & Wagnalls Dictionary as:

One who or that which takes the place or serves in lieu of another; * * *.

That admission is no warrant for finding that this commodity is an "imitation" of absinthe. A number of commodities might be used as substitutes for a given substance, which would not be imitations of that substance. This is especially true in the case of potables.

With these distinctive differences existing between the two products, it is evident that this Liqueur Veritas is not an imitation of absinthe, as classified and assessed.

Is the merchandise a liqueur as claimed by the plaintiff? In *Batjer* v. *United States*, 11 Ct. Cust. Appls. 60, T. D. 38726, the court defines that term as follows:

Liqueurs are perfumed or flavored spirits sweetened by the addition of sugar, although the designation is also applied it seems to a very high grade of sweetened or unsweetened spirits which, although not artificially perfumed or flavored, have a characteristic delicate aroma of their own and a particularly agreeable taste. [See "liqueur," New International Encyclopedia and Encyclopaedia Britannica, 11th ed.]

The above definition was read to the witness Schwartz, who testified that the instant commodity falls within such definition. It is true that this witness had not bought or sold this commodity, his profession being that of an analytical chemist. However, he has been engaged in analyzing beverages for 30 years, including cordials, liqueurs, and various distilled spirits. The witness Wile, a thoroughly qualified witness, testified that this Liqueur Veritas is a liqueur and is bought and sold throughout the United States as such; that it is sold to the same class of trade for the same uses, i. e., as a cordial or liqueur.

The testimony of all of the witnesses, together with the analysis (exhibit 2) establishes that the instant commodity is a spirit flavored with anise and sweetened by the addition of sugar. We therefore find that it falls within the definition above set forth. Even were this not proven, it clearly falls within the basket provision in paragraph 802, as modified by the Mexican Trade Agreement, in that it is a compound or preparation in which distilled spirits are the component material in chief value, which carries the same rate of duty.

For the foregoing reasons we find this Liqueur Veritas to be properly dutiable as claimed by the plaintiff under the provision for liqueurs in paragraph 802 of the Tariff Act of 1930, as modified by the trade agreements with France and Argentina, *supra*, at $2.50 per proof gallon.

Judgment will be rendered accordingly.